# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2012

No. 11-10894

Lyle W. Cayce
Clerk

GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY,

Plaintiff - Appellee,

v.

MISSIONARY CHURCH OF DISCIPLES OF JESUS CHRIST; MICHAEL A. MEYER; AMANDO SALGADO,

Defendants - Appellees,

v.

SONYA GILMORE,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant Sonya Gilmore was injured in a car accident. The other car in the accident was owned by Appellee Amando Salgado, a superintendent of the Appellee Missionary Church of the Disciples of Jesus Christ (the "Church"), and driven by Appellee Michael Meyer, a member of the Church. The accident occurred while Meyer and other Church members were taking a lunch break from cleaning and repairing Church property. Gilmore sued the Church,

No. 11-10894

Salgado, and Meyer in Texas state court.  At the time of the accident, the Church maintained an insurance policy with Appellee GuideOne Speciality Mutual Insurance Company.  Following Gilmore's state lawsuit, GuideOne sought a declaratory judgment in federal court resolving whether its insurance policy (the "policy" or the "insurance policy") covered Gilmore's accident.

Because the district court erroneously held that GuideOne has no duty to defend the Church and Salgado, improperly adjudicated the scope of GuideOne's duty to indemnify, and improperly asserted jurisdiction over Gilmore's state-law claims, we VACATE the district court's judgment.  Additionally, we RENDER judgment that GuideOne has a duty to defend the Church and Salgado in Gilmore's underlying state lawsuit, and we RENDER judgment that the scope of GuideOne's duty to indemnify cannot be adjudicated until after Gilmore's claims are decided in state court.

## I.

We begin by summarizing the relevant facts.

*The Accident.*  On March 9, 2006, two cars collided in San Antonio.  Gilmore drove one; Meyer, a general member of the Church, drove the other, as passengers Raul Rodriguez and Francisco Restrepo rode with him.  The vehicle driven by Meyer–a 1992 van (the "van")–was owned by Amando Salgado, the head of Texas's branch of the Church.

Four days before the Accident, Salgado had driven Meyer, Rodriguez, and Restrepo from Dallas to San Antonio.  The original purpose of the trip was to provide Rodriguez with a ride to visit his father.  Upon arriving in San Antonio, however, the men realized that the Church's prayer center in San Antonio was dirty, and they decided to clean it.  After they had made this decision, Salgado received a call from Church members in Houston seeking assistance with a broken door.  He agreed to travel to Houston to assist them.

No. 11-10894

Salgado left for Houston on March 8. Before leaving, he went grocery shopping and left Meyer, Rodriguez, and Restrepo with bread, turkey, and soda. He told Meyer, Rodriguez, and Restrepo that he would be gone one day and one night. Meyer, Rodriguez, and Restrepo remained in San Antonio, working on repairs to the prayer center.

Around lunch time on March 9, Meyer, Rodriguez, and Restrepo drove to the restaurant El Pollo Loco. Meyer, who had a New York State permit but no license, drove the van. During this trip, Meyer ran a red light and collided into Gilmore's vehicle. Gilmore alleges that she suffered the following injuries as a result of the accident:

> a closed head injury with concussion, loss of consciousness, seizure disorder, torn tympanic membrane, left sided hearing loss, transverse process fractures of T7 and T8, multiple rib fractures, lung contusions, pneumothorax, left clavicle fracture, bilateral pelvic fractures, pubic rami fracture, sacrum fracture, coccyx fracture and urinary dysfunction.

*Gilmore's State-Law Negligence Suit.*     Gilmore filed suit in Texas state court against the Church, Meyer, and Salgado. She alleged that the Church and Salgado had failed to exercise reasonable care in the ownership, control, and operation of the van, and that the Church and Salgado had negligently entrusted the van to Meyer. The Church moved for summary judgment in the state-court proceeding, but the state court denied the Church's motion, finding that an issue of fact remained as to a number of questions.[1]

---

[1]     Specifically, the state court denied defendants' motion for summary judgment because the court concluded that the following issues required a trial:

1. Whether the Church explicitly and/or implicitly authorized Salgado to transport three individuals, including Meyer, to San Antonio on a "special mission" to make the house in San Antonio habitable for the Church's purposes.
2. Whether Salgado, Meyer, Restrepo, and Rodriguez were all acting in furtherance of, for benefit of and on behalf of the Church at the time of the accident.
3. Whether Salgado and Meyer were employees of the Church at the time of the

No. 11-10894

*The Insurance Policy*. Prior to the accident, GuideOne had issued a commercial general liability policy to the Church. The policy covered both cars owned by the Church and "nonowned 'autos'." The Amendatory Endorsement to the policy describes nonowned autos in the following way: "those autos you [that is, the Church] do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs."

In pertinent part, the Amendatory Endorsement to the policy provides that coverage exists in the following situation:

> Insuring Agreement of Coverage A (Section 1) of the Commercial General Liability Coverage Form applies to all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by and 'accident' and resulting from the maintenance or use of a covered 'auto.' However we have no duty to defend suits for 'bodily injury' or 'property damage' not covered by this endorsement.

Further, it defines "insureds" as follows:

> a. You for any covered auto. b. Any of your officers, clergy, or employees are insureds but only with respect to their duties as such.

accident.

4. Whether the Church is liable for the acts and/or omissions of Salgado and Meyer because of the relationship between those parties.

5. Whether the Church knew or should have known that Meyer and/or Restrepo and/or Rodriguez would drive the vehicle in question after being left alone in the house with the keys available to them without restriction.

6. Whether the Church granted Meyer express or implied permission to use a motor vehicle.

7. Whether the Church violated the duty owed to Gilmore to exercise ordinary care in the ownership, control, and operation of the vehicle in question.

8. Whether the Church negligently entrusted the vehicle to Meyer.

9. Whether the Church granted either express or implied permission for Meyer to use the vehicle in question.

10. Whether the Church was negligent in failing to restrict access to the keys which could be used to operate the vehicle in question.

11. Whether the Church, Salgado and Meyer are jointly and severally liable.

> c. Any person who is a 'volunteer' for you is an insured, but only while using an 'auto' with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you . . . e. Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an 'insured' but only to the extent of that liability.

*The Declaratory Judgment Action.* On January 5, 2011 GuideOne filed an action for a declaratory judgment against the Church, Meyer, Salgado, and Gilmore in federal court. GuideOne asked the district court to declare that it had no duty to defend or indemnify the Church, Meyer, or Salgado in the underlying state-court lawsuit. On May 26, 2011, GuideOne moved for default judgment against Meyer based on his failure to respond to its complaint, and the court granted GuideOne's motion the next day.

GuideOne also moved for summary judgment against the Church, Salgado, and Gilmore. The Church and Salgado responded, arguing that factual issues concerning the scope of GuideOne's duty to defend and duty to indemnify precluded summary judgment. Gilmore also objected to GuideOne's motion for summary judgment on the grounds that the pleadings in the state action showed that GuideOne's duty to defend and indemnify had been triggered.

The district court granted GuideOne's motion for summary judgment. In sum, it ruled that GuideOne had no duty to defend the Church or Salgado with respect to the underlying lawsuit; that GuideOne had no duty to indemnify the Church or Salgado with respect to the underlying lawsuit; that neither the Church nor Salgado had breached any duty it owed to Gilmore relating to the accident; and that Gilmore was enjoined from prosecuting any further actions in connection with the accident. In so holding, it concluded that the insurance policy at issue created a duty to defend that was co-extensive with the duty to indemnify. Accordingly, instead of limiting its consideration to the underlying state-court petition and the insurance policy pursuant to Texas's eight-corners

No. 11-10894

rule, the district court examined the evidence presented by the parties in deciding that GuideOne had no duty to defend or duty to indemnify. While it acknowledged that several of its rulings affected unresolved issues in the underlying state-court proceeding, the district court explained that "[the district court] is the only [court] that is in a position finally to resolve the issues" and that the Declaratory Judgment Act's broad grant of authority permitted it to do so.

*The Appeal.*        Gilmore filed a timely notice of appeal challenging the district court's judgment. In the proceeding before this court, Gilmore is the only Appellant. The Appellees are GuideOne, which filed a brief with this court; the Church and Salgado, which together filed a brief with this court; and Meyer, who did not file a brief with the court. At the district court stage, the parties were aligned differently: GuideOne was the plaintiff, arguing that it had no duty to defend or indemnify the Church, Salgado, or Meyer; and the Church, Salgado, and Gilmore were the defendants, arguing that GuideOne did have a duty to defend and indemnify the Church and Salgado from the accident.[2] After the

---

[2]    Federal courts have a duty to ensure that parties are properly aligned, and, if necessary, they must carry out that duty sua sponte. Because the parties were aligned differently on appeal than at the outset of the case–that is, GuideOne was opposed to the Church and Salgado before the district court, while GuideOne is now aligned with the Church and Salgado–we asked the parties to submit briefing on whether they were aligned properly before the district court. If the parties here had not been properly aligned, diversity jurisdiction would have been defeated, and the district court would have lacked jurisdiction to consider this case.

We conclude, however, that the parties were properly aligned before the district court. When deciding whether parties should be realigned, courts must determine whether there is a "collision of interest" between the parties in question. *See Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010). "Whether the necessary 'collision of interest' exists must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Id.* (quoting *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941)). An examination of the pleadings demonstrates that while GuideOne was urging the district court to exercise jurisdiction over its claims, the Church and Salgado were urging the district court to decline jurisdiction. This demonstrates the necessary "collision of interest" between, on one hand, GuideOne, and, on the other hand, the Church and Salgado, to establish that the parties

6

No. 11-10894

district court ruled that Gilmore's state-law claims against the Church and Salgado lacked merit, and enjoined further state-court proceedings on Gilmore's claims, the Church and Salgado shifted to defending the district court's judgment, including the district court's rulings that GuideOne owed no duty to indemnify or defend the Church or Salgado.

## II.

We begin by assessing the district court's adjudication of the scope of GuideOne's duty to defend the Church and Salgado.[3]   Then, we turn to the district court's adjudication of GuideOne's duty to indemnify the Church and Salgado. We next examine the preclusive effect of the default judgment that the district court entered against Meyer.  Finally, we consider the district court's

---

were properly aligned.  *See Griffin*, 621 F.3d at 388.  Therefore, the district court had jurisdiction over this action.

[3]   GuideOne contends in its brief that Gilmore lacks standing to challenge the district court's ruling with regard to GuideOne's duty to defend, and we therefore lack jurisdiction to consider the district court's duty-to-defend ruling.  GuideOne's argument misapprehends the nature of this court's jurisdiction.   To obtain standing to appeal a district court's ruling, the appealing party need only be "aggrieved by a judgment." *See Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 546 (5th Cir. 2009).  While GuideOne maintains that Gilmore was not injured by the district court's duty-to-defend ruling, it concedes, as it must, that Gilmore was "aggrieved" by aspects of the district court's judgment.  As Gilmore was "aggrieved by a judgment," there is no question that Gilmore has standing to appeal the district court's judgment.  Further, the court's other prerequisites for jurisdiction are satisfied.  Accordingly, the panel has jurisdiction to review the district court's judgment.  Once jurisdiction attaches, Courts of Appeals have broad authority to dispose of district court judgments as they see fit. *See* 28 U.S.C. § 2106 (providing Courts of Appeals with power to "affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review" and "remand the cause, and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances").  Section 2106 clearly authorizes this court to "modify" or "vacate" the district court's ruling with respect to GuideOne's duty to defend, and "direct the entry" of a different ruling, no matter which party challenges that particular ruling.

No. 11-10894

disposition of Gilmore's underlying state-law claims and its injunction barring Gilmore from pursuing these claims in state court.[4]

## A.

The court reviews a decision rendered on a motion for summary judgment de novo. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012). The interpretation of an insurance contract is also reviewed de novo. *Id.*

## B.

To decide whether GuideOne has a duty to defend Church and Salgado, we must first determine whether Texas's eight-corners rule applies to this declaratory judgment action. Because we conclude that the eight-corners rule does apply, we then compare the allegations in Gilmore's petition to GuideOne's insurance policy. Finally, we consider whether to invoke an exception to the eight-corners rule in this case.

## 1.

In this circuit, courts routinely adjudicate the scope of insurers' duty to defend under Texas law. To this point, both Texas courts and federal courts have consistently applied the eight-corners rule. "According to the eight corners rule, the scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Nat'l Cas. Co.*, 669 F.3d at 612 (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)). Courts have defined the scope of the duty to defend broadly:

---

[4] In addition to the judgment Gilmore appeals from, the parties' briefing also addresses the preclusive effect of a default judgment that the district court previously entered against Meyer. Based on Meyer's failure to appear, the district court entered a default judgment providing that GuideOne had no duty to defend or indemnify Meyer against Gilmore's state-law claims. The judgment that Gilmore appeals from in this proceeding, however, was in no way based upon the default judgment entered against Meyer. Accordingly, the preclusive effect of that default judgment is not before us. We do not address it.

No. 11-10894

> Where the [petition] does not state facts sufficiently to clearly bring
> the case within or without the coverage, the general rule is that the
> insurer is obligated to defend if there is, potentially, a case under
> the [petition] within the coverage of the policy.

*Id.* at 612-13 (quoting *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141).

The district court did not follow that well-established approach here. Instead of confining its duty-to-defend analysis to the state-court petition and governing insurance policy, the district court based its duty-to-defend analysis on its assessment of the evidence submitted by the parties. In so doing, the district court reasoned that the parties had contracted around the eight-corners rule. Further, the district court ruled on the claims brought in the underlying state-court proceeding–claims that the state court had already set for trial–and issued an injunction barring Gilmore from raising those claims again in any forum.

The district court's departure from the typical method of analysis stems from its conclusion that GuideOne's duty to defend and its duty to indemnify were co-extensive in this case. The district court held that the parties intended to narrow the scope of GuideOne's duty to defend to only those claims that the Church and Salgado could prove were covered by the policy. It therefore reasoned that instead of comparing the allegations in Gilmore's petition to the language in the insurance policy, it was required to compare the language in the insurance policy to the evidence presented in support of Gilmore's claims.

We disagree with this narrow interpretation of GuideOne's duty to defend under the insurance policy. The eight-corners rule is a judge-made rule, and we have written that parties can agree to contract around the rule. *See Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 574 (5th Cir. 2010); *see also* 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 200:5 (3d ed. 2009). But the parties direct us to no cases in which a Texas court or a

No. 11-10894

federal court interpreting Texas law did not apply the eight-corners rule when ascertaining the scope of a duty to defend.[5] Given that courts have applied the rule so consistently, GuideOne must convince us that we should be the first appellate court interpreting Texas law to hold that two parties contracted around the eight-corners rule.[6]

GuideOne has not persuaded us to do so. As GuideOne correctly points out, the eight-corners rule assumes that the duty to defend is defined more broadly than the duty to indemnify. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). From this premise, GuideOne reasons that by defining the duty to defend in the same terms as the duty to indemnify, an insurance policy rebuts the presumption that the duty to defend is broader than the duty to indemnify. But GuideOne's argument misconstrues how the eight-corners rule operates. The duty to defend is not interpreted more broadly than the duty to indemnify by reason of language in the insurance policy that expressly defines the duty to defend more broadly than the duty to indemnify. The contrast instead results from what the language setting forth those duties is compared with: While courts compare the language setting forth the duty to defend with the allegations in the petition, they compare the language setting forth the duty to indemnify with the evidence presented by the parties. *See, e.g.*, *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198,

---

[5] Nor do the parties direct us to any Texas cases conditioning the application of the eight-corners rule on policy language providing that the duty to defend applies to "groundless, false or fraudulent" allegations. In applying the eight-corners rule, the Texas Supreme Court has explained that a particular policy included language requiring the insurer to defend against "groundless, false or fraudulent" allegations. *See Fielder Rd.*, 197 S.W.3d at 310. It has not written, however, that the eight-corners rule applies only to policies containing such language.

[6] GuideOne cites decisions from other states that have abandoned the eight-corners rule in support of its argument that we should not apply the eight-corners rule here. The unwavering commitment of Texas's courts to the eight-corners rule renders these out-of-jurisdiction decisions unpersuasive.

201, 203 (Tex. 2004) (explaining difference in how courts interpret the duty to defend compared with the duty to indemnify); *Northfield Ins. Co. v. Loving Home Care,* 363 F.3d 523, 531 (5th Cir. 2004) (contrasting duty-to-defend inquiry, which focuses on "alleged facts in the petition," with duty-to-indemnify inquiry, which focuses on "the actual facts that underlie the cause of action and result in liability"). Consequently, even if an insurance policy employs the same language for the duty to defend and the duty to indemnify, Texas courts define the duty to defend more broadly than the duty to indemnify.[7]

Here, the policy does not define the duty to defend more narrowly than Texas courts typically do. The insurance policy provides that "we have no duty to defend suits for 'bodily injury' or 'property damage' not covered by this endorsement." We read this provision to mean that the same policy language that sets forth the duty to indemnify also sets forth the duty to defend. But this language does not imply, as GuideOne urges, that courts must ascertain the scope of GuideOne's duty to defend by weighing the evidence in support of Gilmore's claims. Indeed, it says nothing about how courts should examine the allegations in the underlying proceeding when resolving GuideOne's duty to defend. Accordingly, the language gives no reason to depart from Texas's time-honored manner of interpreting insurers' duty to defend. The language of this insurance policy, in fact, roughly tracks the usual understanding of the eight-corners rule that "the duty to defend does not extend to circumstances where there is no duty to indemnify as a matter of law . . . ." *See* 14 Couch on Insurance § 200:11; *see also Northfield Ins. Co.,* 363 F.3d at 528 ("If the petition only alleges facts excluded by the policy . . . the insurer is not required to

---

[7] This difference reflects the assumption of Texas courts that the duty to defend is determined at the beginning of a proceeding, when courts have no evidence to examine; but the duty to indemnify is determined at a later stage, when courts can examine the evidence. *See* 14 Couch on Insurance 200:3 ("The distinction between the duty to defend and the duty to indemnify is based upon the time when the duties are determined.").

defend."). Like the hornbook description of the eight-corners rule, the language in the GuideOne policy does no more than affirm that if "there is no possible factual or legal basis on which the insurer could be obligated to indemnify the insured," GuideOne has no duty to defend the insured. *See* 14 Couch on Insurance § 200:11; *see also Northfield Ins. Co.*, 363 F.3d at 528. In effect, the eight-corners rule is ensconced in the policy.

The language relied upon by GuideOne thus reinforces our conclusion that the eight-corners rule applies to this policy. Our confidence in this conclusion is buttressed by our application of the eight-corners rule to a materially identical policy in a previous case. *See Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 598 (5th Cir. 2006) (applying eight-corners rule when policy provided that "we have no duty to defend suits for bodily injury or property damage not covered by this Coverage Form"). The eight-corners rule governs our analysis.

## 2.

Because the district court did not apply the eight-corners rule, we do so here in the first instance. As Texas law requires, we base our analysis solely on the allegations in the underlying pleadings and the language in the insurance policy. *Nat'l Cas. Co.*, 669 F.3d at 612.

As quoted above, the insurance policy

> applies to all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the maintenance or use of a covered 'auto.' However we have no duty to defend suits for 'bodily injury' or 'property damage' not covered by this endorsement.

There is no question that the Church and Salgado are "insured[s]" and that Gilmore has alleged "bodily injury . . . caused by an accident . . . ." For purposes of the duty-to-defend analysis, the only disputed question is whether a "covered 'auto'" caused Gilmore's "bodily injury." To decide whether the van that injured

Gilmore, which the Church did not own, was a "covered 'auto'," we must determine whether it is a "nonowned" vehicle. The policy describes nonowned vehicles as follows: "those autos you [that is, the Church] do not own, lease, hire, rent or borrow that are used in connection with your business."

In light of this policy language, the allegations in Gilmore's petition demonstrate that "there is, potentially, a case under the [petition] within the coverage of the policy." *See Nat'l Cas. Co.*, 669 F.3d at 612-13. According to Gilmore's petition, Salgado and Meyer had traveled to San Antonio "to make the [Church's] house habitable." The petition further alleges that Salgado and Meyer were "employees" of the Church, and that when Meyer left to get food, he was acting with the "express and/or implied permission of the Church and Salgado." In effect, Gilmore alleges that the Church was using the van to support its institutional goal of repairing its property, and, as a means of achieving that goal, one Church employee permitted a second Church employee to use the first employee's van. With respect to GuideOne's duty to defend, these allegations demonstrate that the van, a "nonowned" vehicle, was "used in connection with [the Church's] business." Accordingly, under the eight-corners rule, GuideOne has a duty to defend its insured, the Church and Salgado, from Gilmore's lawsuit.[8]

**3.**

Having concluded that the eight-corners rule applies to this policy, we must next address GuideOne's argument that even if the district court

---

[8] GuideOne appears to argue that the body of its commercial general liability policy limits the duties it owes to the Church and Salgado under the Amendatory Endorsement, which establishes GuideOne's duties with respect to "nonowned 'autos'." This argument ignores the text of the Amendatory Endorsement, which provides that "[t]his endorsement changes the policy . . . This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part." The language of the Amendatory Endorsement controls the scope of GuideOne's duties respecting matters covered by the Amendatory Endorsement.

erroneously interpreted the policy, one of the recognized exceptions to the eight-corners rule applies here. The Texas Supreme Court has cited with approval cases describing a "very narrow" view of permissible exceptions to the eight-corners rule:

> Although this court has never expressly recognized an exception to the eight-corners rule, other courts have. Generally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant as an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim. Recently the Fifth Circuit observed that if this Court were to recognize an exception to the eight-corners rule, it would likely do so under similar circumstances, such as: "when it is initially impossible to determine whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."

*Fielder Rd.*, 197 S.W.3d at 308-09 (quoting *Northfield Ins. Co.,* 363 F.3d at 531). GuideOne argues that the extrinsic evidence considered by the district court falls within this exception to the eight-corners rule recognized by Texas courts.

This contention fails to acknowledge an important limitation on the exception: it applies only to the consideration of evidence that "does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* at 309 (quoting *Northfield Ins. Co.*, 363 F.3d at 531). This standard is not met here. The key question in the coverage dispute relates to the purpose of Meyer's car trip: was Meyer's car trip taken "in connection with [the Church's] business"? The disputed issue of the purpose of Meyer's trip overlaps with the merits of Gilmore's negligent entrustment action against the Church and Salgado. If we conclude that the purpose of Meyer's trip was personal, our finding will support Salgado's argument that he did not entrust his vehicle to Meyer; if we conclude that the purpose of Meyer's trip was Church-related, our

14

No. 11-10894

finding will support Gilmore's argument that Salgado negligently entrusted his vehicle to Meyer.  For this reason, the evidence considered by the district court to determine coverage overlaps with the merits of Gilmore's action.  *See Fielder Rd.*, 197 S.W.3d at 308-09.  Accordingly, this case does not fall under the "very narrow" exception to Texas's eight-corners rule.  *See id.*

### 4.

In summary, we conclude that the district court erroneously interpreted the insurance policy at issue in this case by failing to apply Texas's eight-corners rule.  Pursuant to this eight-corners rule, the allegations in Gilmore's petition fall within the insurance policy.  Further, the facts here do not support applying an exception to the eight-corners rule.  Accordingly, GuideOne has a duty to defend the Church and Salgado against Gilmore's lawsuit.

### C.

Since we have decided that GuideOne has a duty to defend the Church and Salgado from Gilmore's lawsuit, it follows that the scope of GuideOne's duty to indemnify the Church and Salgado cannot be resolved until Gilmore's claims are ruled upon.  *See, e.g., Nat'l Cas. Co.*, 669 F.3d at 618.  The district court erred by holding that GuideOne had no duty to indemnify the Church and Salgado.

### D.

Finally, we turn to the injunction preventing Gilmore from bringing claims relating to the accident against the Church and Salgado.  Both the Supreme Court and this court have emphasized that declaratory judgment actions seeking resolution of an insurance coverage dispute are not meant to resolve the underlying tort claims.  *See  Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941) (refusing to enjoin underlying state-court proceedings in declaratory judgment action brought by insurer); *Atl. Mut. Fire Ins. Co. of Savannah v. Cook*, 619 F.2d 553, 555 (5th Cir. 1980) ("[W]hat is at issue here is not the liability of the insurer, but rather instead whether a policy clause applies that excludes the

insurer Atlantic from liability for bodily injuries arising out of the use of a motor vehicle.") (interpreting Alabama law).  The district court here nevertheless disposed of Gilmore's state-law claims in the process of adjudicating GuideOne's declaratory judgment action.  Given the federalism values at stake in allowing state-law claims to be resolved in a plaintiff's chosen forum, the district court abused its discretion by exercising jurisdiction over Gilmore's state-law claims. *See Mitcheson v. Harris*, 955 F.2d 235, 240 (4th Cir. 1992) (holding that district court abused its discretion by exercising jurisdiction over insurer's declaratory judgment action that presented same issues as pending action in state court); 10B Wright and Miller § 2758 ("[F]ederal courts frequently refuse to entertain a declaratory action out of deference to a pending state action."); *cf. Torch, Inc. v. LeBlanc*, 947 F.2d 193, 196 (5th Cir. 1991) (holding that district court did not abuse its discretion in declining to exercise jurisdiction over declaratory judgment action where there was a pending state-court action and a federal ruling would "deny [the plaintiff] his right to have his case heard before a Texas state court jury.").

As the district court's exercise of jurisdiction over Gilmore's state-law claims was improper, the Anti-Injunction Act does not allow the district court to enjoin Gilmore from bringing those claims in another forum.  *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").[9]  The district court's injunction is vacated.

---

[9]    The Appellees seek to defend the district court's injunction on the basis of the re-litigation exception to the Anti-Injunction Act.  *See Harvey Specialty & Supply v. Anson Flowline Equip.*, 434 F.3d 320, 323 (5th Cir. 2005).  As we have ruled that the district court improperly exercised jurisdiction over Gilmore's state-law claims, though, the district court's injunction would not prevent Gilmore from re-litigating her claims; it would prevent her from litigating them at all.  This exception does not apply here.

No. 11-10894

## III.

For these reasons, we VACATE the district court's judgment.  We also RENDER judgment that GuideOne has a duty to defend the Church and Salgado from Gilmore's claims, and we RENDER judgment that the scope of GuideOne's duty to indemnify the Church and Salgado is non-justiciable at this point.  We REMAND for entry of final judgment only.