**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 3, 2012

No. 10-41012

Lyle W. Cayce
Clerk

NATIONAL CASUALTY COMPANY,

Plaintiff - Appellee - Cross-Appellant,

v.

WESTERN WORLD INSURANCE COMPANY,

Defendant - Appellant - Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Two insurers dispute whether their respective insurance policies require them to defend the insured against allegations regarding an accidental death. Both insurers sought a declaratory judgment from the district court that their policies did not cover the underlying lawsuit. After the district court ruled that each insurer must provide primary coverage for the accident, both insurers appealed. We AFFIRM the district court's judgment.

**I.**

Alma Batie, daughter of Darline Rigsby, sued Preferred Ambulance, Inc. ("Preferred Ambulance") in Texas state court on behalf of herself and as representative of Rigsby's estate ("the underlying lawsuit"). In her complaint,

No. 10-41012

Batie alleged that Rigsby was injured while emergency medical technicians[1] ("EMTs") loaded her into an ambulance, and died from these injuries several days later. Batie further averred that Preferred Ambulance's negligence caused Rigsby's death. Specifically, she alleged that Preferred Ambulance and its employees "failed to use ordinary care by various acts and omissions," including

> (a.) failing to properly secure Darl[i]ne Rigsby to the gurney to transport her from the dialysis facility to the ambulance; (b.) in moving Darline Rigsby from one place to another when it was unsafe to do so; (c.) in failing to provide sufficient, competent personnel to safely transport Darline Rigsby from the dialysis center to and into the ambulance. (d.) In failing to properly train its employees. (e.) In failing to use appropriate equipment and devices to assist in safely moving Darl[i]ne Rigsby from the dialysis treatment facility into the ambulance or van.

At the time of the accident, National Casualty Company ("National Casualty") and Western World Insurance Company ("Western World") each had issued insurance policies to Preferred Ambulance. In relevant part, the Business Auto Coverage insuring agreement issued by National Casualty (the "National Casualty policy") provided coverage for

> all sums an insured must pay as damages because of "bodily injury" . . . to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The National Casualty policy also contained an exclusion for bodily injuries "resulting from the providing or the failure to provide any medical or other professional services." The policy limit was $1,000,000 per incident.

Western World's Commercial General Liability policy (the "Western World policy") provided coverage for the following:

---

[1] Batie's complaint refers to the employees of Preferred Ambulance as "emergency medical technicians and/or paramedics." We use only "emergency medical technician" and "EMT" to avoid confusion.

2

No. 10-41012

those sums the insured becomes legally obligated to pay as damages because of any "bodily injury," "property damage" or "personal injury" to which this coverage part applies caused by a "professional incident."

The Western World policy excluded coverage for "bodily injury . . . arising out of the . . . use . . . of any . . . 'auto' . . . ." It further provided that its policy is excess over "any of the other insurance, whether primary, excess, contingent or on any other basis . . . if the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion g, of Section 1 - Coverage A - Bodily Injury and Property Damage Liability." The policy explained that "[w]hen this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" The policy limit was $1,000,000 per incident.

National Casualty sought a judgment from the United States District Court for the Southern District of Texas declaring that (1) the National Casualty policy did not cover the underlying lawsuit; (2) the Western World policy did cover the underlying lawsuit; (3) National Casualty had no duty to indemnify Preferred Ambulance in the underlying lawsuit; and (4) National Casualty is entitled to reimbursement from Western World for defense costs already expended. Both parties moved for summary judgment. The district court ruled that both the National Casualty policy and the Western World policy provided primary coverage for the underlying lawsuit. The district court further held that indemnification was not justiciable at the time of its ruling and therefore declined to rule on this issue. This appeal followed.

## II.

Both parties challenge aspects of the district court's ruling. National Casualty argues that while the district court correctly held that the Western World insurance policy provided primary coverage, it erred in the following

No. 10-41012

ways: by holding that the National Casualty policy provided primary coverage; by ruling that the issue of indemnification was not justiciable; and by failing to decide whether Western World must reimburse a share of the costs National Casualty has already paid to defend the underlying lawsuit. Western World, conversely, argues that the district court correctly held that the National Casualty policy provided primary coverage of the underlying lawsuit, but erred in holding that the Western World policy provided primary coverage of the underlying lawsuit and by failing to consider the effect of the "other insurance" provision in Western World's policy. We address each of these contentions in turn.

### A.

We review the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010). The interpretation of an insurance contract is also reviewed de novo. *Id.*

### B.

We begin by considering whether National Casualty's policy applies to the underlying lawsuit. To make this determination, we must consider whether the allegations in the underlying lawsuit are sufficient to establish that the accident resulted from a "use" of the ambulance as that term is interpreted under Texas law, and whether any exclusions in the National Casualty policy apply to the underlying lawsuit.

### 1.

To determine whether the insurer has an obligation to defend a lawsuit, Texas courts apply the "eight corners" rule. According to the eight corners rule, the scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchant's Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). The scope of the duty to defend is interpreted broadly: "Where

## No. 10-41012

the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

The issue here is whether Rigsby's injury resulted from the "use" of an automobile, as that phrase is used in the National Casualty policy and interpreted under Texas law.[2] The underlying suit alleged that Rigsby was injured "during an attempt to load her into the Preferred Ambulance vehicle." The complaint does not allege exactly when in the process of loading Rigsby into the ambulance her injury occurred. Since the duty to defend extends to any allegation that could conceivably be covered by the policy, *see Nat'l Union Fire Ins.,* 939 S.W.2d at 141, we interpret the allegation in the underlying complaint to mean that Rigsby was injured while she was being placed into the ambulance, which is the interpretation most favorable to coverage.

Texas law sets forth a three-part test for determining whether an injury relates to a "use" of an automobile under an insurance policy:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely

---

[2] Unless otherwise noted, the analysis in this opinion only addresses the parties' respective duties to defend the underlying lawsuit. Under Texas law, "the duty to defend and the duty to indemnify are distinct and separate duties." *Utica Nat. Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations and internal quotation marks omitted).

contribute to cause the condition which produces the injury, but
must itself produce the injury.

*See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 154
(Tex. 2010).

National Casualty argues that injuries that occur while patients are being loaded into an ambulance do not result from "use" of an automobile under the National Casualty policy. Because the ambulance did not cause the injury alleged in the underlying lawsuit, it contends, the injury did not result from "use" of the ambulance but was instead merely the site of the injury. Western World responds that where a person is injured while being loaded into an automobile, that injury is "caused by an accident" that "result[s] from the use of a covered auto."

Since the parties do not dispute that the first two components of the test are satisfied, we focus on the third component of the "use" test reaffirmed by *Mid-Continent Casualty*. For our purposes, the most instructive Texas Supreme Court decision interpreting the third component of the "use" test is *Mid-Century Insurance Co. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999). In *Lindsey*, a boy who found a truck door locked climbed into the truck bed and attempted to enter the cab through the back window. While entering the truck, the boy accidentally set off a loaded shotgun sitting in a gun rack over the window, causing a bullet to strike a passenger of the truck. Holding that the accident was a "use" of the truck, the court wrote as follows:

> Metzer's sole purpose was to gain entry into the truck to retrieve his clothing. His conduct did not stray from that purpose. He did not play with the gun, or try to shoot it, or load or unload it, or purposely handle it in any way. His contact with the gun was entirely inadvertent. Although the boy was attempting an unorthodox method of entry, it was not an unexpected or unnatural use of the vehicle, given his size, the fact that the vehicle was locked, and the nature of boys. It was the boy's efforts to enter the vehicle that directly caused the gun to discharge and Lindsey to

No. 10-41012

become injured . . . . Application of the third Appleman/Couch factor makes this a close case, but we think on balance the Metzer truck "produced"–to use the factor's word–the injury. Certainly, the truck was not merely the situs of activity, unrelated to any use of the truck that resulted in the accident.

*Id.* at 158-59.

Our interpretation of National Casualty's "use" provision is governed by *Lindsey*. Just as in *Lindsey*, the "sole purpose" of the alleged attempt to place Rigsby in the ambulance was to use the ambulance. *See id.* at 158. The alleged attempt to load her into the ambulance "directly caused" her injury. *See id.* Attempting to load a patient onto an ambulance is "not an unexpected or unnatural use of the vehicle." *See id.* Especially considering that this court has emphasized how "broadly" Texas interprets "use" in automobile insurance policies, *see Lincoln Gen. Ins.*, 468 F.3d at 859, *Lindsey* provides strong support for Western World's contention that the underlying lawsuit satisfies the three-part *Mid-Continent Casualty* test for use of an automobile.

National Casualty's argument that the ambulance did not "cause" Rigsby's injury is based on a narrower understanding of "produce" than is permitted by Texas Supreme Court precedent. If the truck in *Lindsey* "produced" an injury when an entering passenger accidentally discharged a gun located in that truck, an ambulance "produces" an injury when an EMT loads a passenger into that ambulance. This case is easily distinguishable from the recent holding of the Texas Supreme Court that a bus driver's transmission of tuberculosis to passengers was not a "use" of the bus. *See Lancer Ins. Co. v. Garcia Holiday Tours,* 345 S.W.3d 50 (Tex. 2011). *Lancer Insurance*, also interpreting the third component of the *Mid-Continent Casualty* test for "use" of an automobile under Texas law, required "a sufficient nexus between [the vehicle's] use as a motor vehicle and the accident or injury." *Id.* at 56. Whereas there is little nexus between transporting passengers in a vehicle and infecting passengers in that

No. 10-41012

vehicle with disease, there is a significant nexus between transporting passengers in a vehicle and loading them into that vehicle. In *Lancer Insurance*, the court explained that the transmission of disease can occur anywhere. That the particular transmission at issue in that case happened to have occurred in a bus was incidental. 345 S.W.3d at 56-57. Conversely, loading passengers into automobiles is integral to the use of automobiles. Injuries that occur while patients are loaded into ambulances can happen only in ambulances.

As the allegations in the underlying lawsuit satisfy the Texas Supreme Court's test for "use" of an automobile, the allegations in the underlying lawsuit establish injuries resulting from the "use" of an automobile under the National Casualty policy. National Casualty must defend the underlying lawsuit.

**2.**

Having determined that the coverage provision in the National Casualty policy encompasses the injuries alleged in the underlying lawsuit, we next consider whether National Casualty's professional services exclusion negates its duty to defend the lawsuit. National Casualty contends that responsibilities such as securing and moving a patient on a gurney constitute the provision of professional services and therefore are excluded from National Casualty's coverage obligations.

To determine whether an exclusion applies, Texas courts look only to the allegations in the complaint and the language of the insurance policy. *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141. Under Texas law, insurers bear the burden of proving that an exclusion of an insurance contract applies. *See Am. Home Assur. Co. v. Cat Tech L.L.C.*, No. 10-20499, 2011 WL 4583838, at *3 (5th Cir. Oct. 5, 2011). "Where an ambiguity involves an exclusionary provision of an insurance policy, we 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more

8

No. 10-41012

accurate reflection of the parties' intent.'" *Gilbert Tex. Constr.*, 327 S.W.3d at 133 (internal citations and quotation marks omitted).

Absent a definition in the contract, a Texas appellate court gave the following definition to the phrase "professional services": "[T]he task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training." *Admiral Ins. Co.,* 607 F.3d at 423 (quoting *Atl. Lloyd's Ins. Co. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476-77 (Tex.App.-Dallas 1998, pet. denied)).

When the underlying lawsuit alleges injuries resulting from the provision of both professional services and non-professional services, a professional services exclusion does not negate the insured's duty to defend. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 373 (5th Cir. 2008) (citing *Utica Nat. Ins. Co.*, 141 S.W.3d at 205). Our precedent has distinguished between "professional" tasks and "administrative" tasks. For example, in *Guaranty National v. North River Insurance Company*, this court divided the conduct underlying plaintiff's allegation that the hospital had not properly secured him in his bed into two components: first, the hospital's decision that the plaintiff needed to be secured, which required professional training; and second, the hospital's "administrative" execution of this judgment, i.e., protecting patients with screws rather than a screen, which did not require professional training. 909 F.2d 133, 136 (5th Cir. 1990).

Here, because the underlying complaint alleges that Batie's injury was caused in part by conduct that did not constitute the provision of "professional services," National Casualty's professional services exclusion does not limit its duty to defend. For instance, decisions relating to the dispatching of EMTs to an accident scene, like the decision of the hospital in *Guaranty*

9

No. 10-41012

*National* to secure patients with screws instead of a screen, are "administrative" and consequently not covered by professional services exclusions.[3]  *Cf. Guaranty Nat'l*, 909 F.2d at 136; *Jefferson Ins. Co. v. Nat'l Union Fire Ins. Co.*, 677 N.E.2d 225, 231 n.15 (Mass. App. Ct. 1997) (holding that communication between radio dispatchers and ambulance attendants was not covered by professional services exclusion).  Thus, the allegation in the underlying complaint of a failure to direct appropriate resources to the accident scene is an injury resulting from the performance of an "administrative" task, not "professional services."  *Cf. Guaranty Nat'l*, 909 F.2d at 136; *Jefferson Ins. Co.*, 677 N.E.2d at 231 n.15.  Because professional services exclusions do not limit insurers' duty to defend lawsuits alleging injuries that result in part from the performance of administrative tasks, National Casualty has a duty to defend the underlying lawsuit.  *Guaranty Nat'l*, 909 F.2d at 136.

## C.

We next consider the extent to which Western World has a duty to defend the underlying lawsuit.  This issue requires us to address, first, whether Western World's duty to defend is negated by the "auto" exclusion in its policy; and second, if the first question is answered negatively, whether Western World is obligated to provide primary coverage or excess coverage of the underlying lawsuit.

## 1.

While Western World does not dispute that the underlying lawsuit falls under its coverage provision, it argues that the exclusion contained in its policy for auto use should be given full force.    The Western World policy

---

[3] Conversely, the provision of emergency medical care, in which, under Texas law, all EMTs must be "certified" as "proficient," *see* Tex. Health & Safety Code Ann. §§ 773.047, 773.048, 773.049, does constitute "professional services."

No. 10-41012

covers injuries caused by a "professional incident," which is defined to include "ambulance services." The Western World policy excludes coverage for "bodily injury . . . arising out of the . . . use . . . of any . . . 'auto' . . . ." "Use" is defined in the policy to "includ[e] operation and loading or unloading." The phrase "loading and unloading," in turn, refers only to the "handling of property," according to the Western World policy. Western World argues that the underlying lawsuit triggers the exclusion in its policy for "use" of an automobile for the same reason that the underlying lawsuit triggers the coverage provision in National Casualty's policy relating to "use" of an automobile.

Western World's argument, however, ignores the differences in how we interpret exclusions and coverage provisions when ascertaining the scope of the insured's duty to defend. While the duty to defend is triggered by a single alleged injury that falls within the scope of the coverage provision, exclusions negate the insured's duty to defend only when all of the alleged injuries that fall into the coverage provision are subsumed under the exclusionary provision. *See St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 887 (Tex. App.-Austin 1999). Western World has not cited, and our research has not uncovered, any Texas cases in which an exclusionary provision was interpreted to negate the duty to defend a lawsuit when the underlying complaint contained allegations that did not fall under the exclusion.

Here, the underlying complaint alleges injuries that are covered under Western World's policy as "ambulance services" but are not excluded as resulting from the "use" of an automobile. For instance, the underlying complaint alleges that Preferred Ambulance's employees failed to properly secure Rigsby to the gurney. The performance of this task is regulated by Texas law, *see* Tex. Health & Safety Code Ann. §§ 773.041(a-1), and is an integral component of "ambulance services." Accordingly, the allegation falls

11

No. 10-41012

under Western World's "ambulance services" coverage provision and triggers Western World's duty to defend the underlying lawsuit.

That duty to defend is not negated by Western World's exclusionary provision because injuries resulting from the failure of Preferred Ambulance to secure Batie into the gurney do not arise from "use" of an automobile. Such injuries are not excluded by the Western World policy because they do not result from the "loading or unloading" of property[4] or "operation" of the ambulance. The failure to secure Batie into the gurney occurred before Preferred Ambulance's employees even began to move her towards the ambulance, so the conduct causing this alleged injury does not arise out of the "operation" of the ambulance. *See St. Paul Fire and Marine Ins. Co. v. Am. Int'l Surplus Lines Ins. Co.*, No. 3:95-CV-0790-D, 1997 WL 160192, at \*2 (N.D. Tex. Mar. 31, 1997) (holding that "use" provision in insurance policy is triggered only when ambulance is being operated or patient is "actually being placed in or removed from the ambulance"). Because the complaint alleges an injury that arises out of "ambulance services" but does not arise out of the "use" of automobiles, Western World has a duty to defend the underlying lawsuit.

## 2.

For similar reasons, Western World's "other insurance" provision does not limit its duty to defend the underlying lawsuit. The "other insurance" provision–which, for our purposes, is substantially the same as the exclusionary provision in Western World's policy[5]–stipulates that Western

---

[4] While Western World argued in the district court that the "use" exclusion in its policy applied because the conduct alleged in the underlying complaint constituted "loading or unloading" of property, its counsel acknowledged during oral argument that it has abandoned this argument on appeal.

[5] The language of the policy implies that the "other insurance" provision is meant to be read more broadly than the exclusionary provision. Any differences in the meaning of the two

World must provide coverage that is excess over other insurers for "loss[es that] aris[e] out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion g . . . ."  It further limits Western World's duty to defend a lawsuit when the "other insurance" provision is triggered and another insurer has a duty to defend the lawsuit.  Western World argues that its obligation is limited to providing coverage that is excess[6] over the coverage provided by National Casualty for the same reason that National Casualty has a duty to defend the underlying lawsuit: the underlying lawsuit alleges injuries arising out of the "use of . . . 'autos'."

But "other insurance" provisions, like exclusionary provisions, are interpreted differently from coverage provisions.  "Other insurance" provisions limit an already-triggered duty to defend only when all of the allegations in the underlying lawsuit that fall under the policy's coverage provision also fall under the policy's "other insurance" provision.  *Cf. Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex. 2008) (citing 14 Couch on Insurance § 200:1) ("If a complaint potentially includes a covered claim, the insurer must defend the entire suit.").  This rule is necessary because allegations in the underlying complaint that fall under a coverage provision but do not fall under an "other insurance" provision could potentially be the

provisions, however, are not material to our analysis.

[6] Western World's policy is not a "true excess policy" but a policy that is "excess by coincidence."  True excess policies, which require the policyholder to obtain primary insurance in addition to the excess policy, are only triggered when that additional insurance is exhausted.  *See U.S. Auto. Ass'n v. Underwriters at Interest,* No. 14-98-00234-CV, 2000 WL 332718, at *1 n.2 (Tex. App.-Hous. March 30, 2000).  Policies that are excess by coincidence, conversely, do not require the policyholder to obtain additional coverage.  *See id.; Tex. Employers Ins. Ass'n v. Underwriting Members of Lloyds,* 836 F. Supp. 398, 408 (S.D. Tex. 1993) (quoting *Guaranty National Ins. v. Am. Motorists Ins.,* 981 F.2d 1108, 1109 (9th Cir. 1992)).  Such policies only limit the insurer's responsibilities when the policyholder happens to have another policy covering the same incident.  *See U.S. Auto Ass'n,* 2000 WL 332718, at *1 n.2.

sole basis for liability.  In such circumstances, given the possibility that the insurer could assume responsibility for primary coverage of the loss, the insurer's duty to defend is not limited by the "other insurance" provision.  *Cf. Zurich Am. Ins. Co.*, 268 S.W.3d at 491.

In this case, Western World must assume responsibility for primary coverage of the underlying lawsuit because the underlying lawsuit contains allegations that trigger Western World's duty to defend but are not covered by the "other insurance" provision.  The allegation of a failure to properly secure Rigsby to the gurney, for example, triggers the duty to defend because it is covered as "ambulance services."  It does not, however, trigger the "other insurance" provision because it does not arise from "use" of an automobile, for the reasons explained in our discussion *supra* of Western World's exclusionary provision.  It is therefore possible that Preferred Ambulance's liability arising from the underlying lawsuit could trigger coverage under the "ambulance services" provision of the Western World policy, but not trigger Western World's "other insurance" provision.  Since insurers have a duty to defend against any lawsuit alleging injuries that could potentially be covered by their policy, *see Zurich Am. Ins. Co.,* 268 S.W.3d at 491, Western World's "other insurance" provision does not limit its duty to defend Preferred Ambulance against the underlying lawsuit.

**D.**

National Casualty also urges us to hold that it has no duty to indemnify Preferred Ambulance in the underlying lawsuit.  This argument is only viable if National Casualty has no duty to defend the underlying lawsuit.  Because we hold that National Casualty has a duty to defend, the district court correctly held that the scope of its duty to indemnify is non-justiciable at this stage of the proceeding.

No. 10-41012

**E.**

Finally, we address National Casualty's contention that Western World should be required to reimburse National Casualty for the $10,291.71 National Casualty has already spent defending the underlying lawsuit.

Under Texas law, an insurer is entitled to contribution when "several insurers share a common obligation or burden and . . . the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007). Because we hold that Western World must provide primary coverage to Preferred Ambulance in the underlying lawsuit, it follows that National Casualty has borne more than its fair share of a common burden.

While National Casualty contends in its briefing that its defense costs are $10,291.71, it is not clear whether that amount reflects the current amount expended by National Casualty. We therefore remand to the district court to determine how much National Casualty has spent defending the underlying lawsuit, with instructions that Western World should reimburse National Casualty for half those costs. To the extent that costs are incurred in the defense of the underlying lawsuit going forward, they shall be shared equally between the parties.

**F.**

In summary, for the purposes of defining the scope of each insurer's duty to defend, we hold that both Western World and National Casualty must provide primary coverage of the underlying lawsuit. Neither the exclusions in their respective policies nor the "other insurance" provision in the Western World policy limit either insurer's duty to defend. Accordingly, to the extent that National Casualty has paid more than half of the defense costs in the

underlying lawsuit to this point, it is entitled to contribution from Western World.

## III.

We AFFIRM the district court's judgment and REMAND for further proceedings consistent with this opinion.