# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2013

No. 12-11169

Lyle W. Cayce
Clerk

839 EAST 19TH STREET, L.P.,

Plaintiff-Appellant,

v.

CITIBANK, N.A., a National Banking Association,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 3:11-cv-1238

Before STEWART, Chief Judge, and KING and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant 839 East 19th Street, L.P. ("839") filed suit against Defendant-Appellee Citibank, N.A. ("Citibank") for breach of contract. The district court granted summary judgment in favor of Citibank and dismissed with prejudice 839's claims. For the reasons stated herein, we affirm.

## I.

In January 2007, 839 obtained a loan from Citibank for the amount of $5,040,000 and signed a promissory note ("the Note") payable to the order of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11169

Citibank. The Note was to be repaid in monthly installments over a period of ten years. 839 used the loan to purchase an apartment property ("the Property") in Houston, Texas for $6,606,000. 839 paid approximately $1.5 million in cash toward the purchase price of the Property. In addition to the Note, 839 signed a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" ("the Deed") in favor of Citibank to secure the loan.

In accordance with the terms of the Deed, 839 was required to keep the Property in good condition and repair regardless of the availability of insurance proceeds to cover or supplement the cost of doing so. Additionally, 839 was required to maintain property all-risk insurance, commercial general liability insurance, and other insurance on the Property at its own expense, with all insurance proceeds assigned and payable to Citibank in the event of a loss. The Deed also contained a Restoration Clause which indicated that, in the event of a loss, 839 would be permitted to propose a plan of restoration and repair of the Property after satisfying a list of enumerated terms and conditions, as long as "no default under the Note . . . shall have occurred and be continuing." The Deed further provided that Citibank was entitled to determine in its reasonable judgment whether a proposed restoration plan complied with the listed terms and conditions in the Restoration Clause. Finally, in the event of a default under the Note by 839, the Deed authorized Citibank to retain any and all insurance proceeds received and to apply them against the outstanding balance owed on the Note.

839 obtained an insurance policy through Lexington Insurance Company ("Lexington"). In September 2008, Hurricane Ike hit and damaged the Property. 839 filed an insurance claim with Lexington. Lexington paid approximately $100,000 in proceeds and 839 began making repairs but did not restore the

2

No. 12-11169

Property to its condition prior to the hurricane.[1]  Then in May, July, and September of 2009, three fires occurred and damaged the Property.  Once again, 839 submitted insurance claims with Lexington.  Lexington disbursed insurance proceeds totaling approximately $604,054.77.  Of the total proceeds, Citibank ultimately retained $450,554.24 and disbursed $153,500.53 to 839 for its use in making repairs to the Property.  839 was never successful in restoring the Property to its condition prior to the hurricane and the fires.

On October 31, 2009, 839 made its regularly-scheduled payment on the Note but thereafter, made no further payments.  Approximately ten days later, Citibank notified 839 via written letter that it had breached the terms of the Deed by failing to maintain the Property in substantially good condition and repair.  Citibank demanded that 839 make the necessary repairs by December 15, 2009.  The repairs were not made.  Then in January 2010, there were several email exchanges between 839 and Citibank regarding potential plans for repairs to the Property.  Shortly thereafter, Citibank sent formal notice through its counsel of record notifying 839 of its default under the Note for failure to pay the monthly installments owed for November and December 2009 and January 2010, in addition to its previous non-monetary default for failing to maintain the Property in good condition and repair.  Subsequently, as per the terms of the Note, Citibank provided notice to 839 that the principal balance on the Note would be accelerated and due in full in the event that the three monthly payments owed were not paid by February 8, 2010.  The amounts were not paid. On March 26, 2010, Citibank sent a letter to 839 demanding payment within ten days of the outstanding principal balance on the Note less the $450,554.24 which

---

[1] A dispute arose between 839 and Lexington over the amount of proceeds paid as a result of the damage from the hurricane.  839 ultimately sued Lexington for its alleged failure to pay the total amount owed under the policy.  That lawsuit appears to have been recently settled. *See 839 East 19th Street, LP v. Lexington Ins. Co.,* No. 4:10–cv–1181 (S.D. Tex.) (June 4, 2012) ("Joint Stipulation of Dismissal").

it had retained in insurance proceeds from Lexington, or approximately $4,876,063.84. The amount demanded was not paid.

Then on April 12, 2010, 839 notified Citibank that it was ready to restore and repair the Property to its original condition and requested receipt of the $450,554.24 in insurance proceeds being held in escrow by Citibank to commence repairs. Citibank replied that it had no obligation to release any insurance proceeds to 839 on account of 839's breach of the terms of the Note and Deed. About a month later, 839 submitted a proposed plan for restoration of the Property. Then on May 26, 2010, in accordance with the terms of the Note permitting its assignment and transfer by Citibank, Citibank entered into a Note Purchase Agreement ("Purchase Agreement") wherein it agreed to sell the Note to JRG Capital Investors I, L.L.C. ("JRG"). Two days later, on May 28, 2010, Citibank rejected 839's proposed restoration plan, citing 839's breach of the terms of the Note and the Deed as grounds for the rejection.

As per the Purchase Agreement, JRG purchased the Note from Citibank for the total amount of $1,650,000. Schedule 2 to the Purchase Agreement provided that Citibank was entitled to keep the insurance proceeds paid as a result of the three fires in 2009 at the Property. The Agreement further stated that: (1) the total amount of insurance proceeds that Citibank was entitled to retain would be capped at $750,000, (2) Citibank had already received $450,554.24 in proceeds which would be applied against the total amount owed on the Note, and (3) Citibank expected to receive approximately $190,000 in additional insurance proceeds. The Agreement then provided various details relating to wire transfers of the proceeds between Citibank and JRG when the payments were received from Lexington. On June 4, 2010, Citibank applied the initial proceeds of $450,554.24 to the balance owed on the Note; JRG and Citibank closed in accordance with the terms of the Purchase Agreement; and JRG became the owner of the Note.

No. 12-11169

In July 2010, JRG initiated non-judicial foreclosure proceedings on the Property. JRG was the highest bidder at the foreclosure sale and bought the Property for $1,650,000. Later, in January 2011, Lexington dispensed a check to Citibank of "additional proceeds" in the amount of $190,208.01. Citibank retained and deposited the check in accordance with the Purchase Agreement with JRG. Approximately $160,000 of the additional proceeds were applied against the balance owed on the Note.[2]

In May 2011, 839 filed suit in federal district court asserting several causes of action, all of which were ultimately dismissed with the exception of its breach of contract claim. Then in October 2012, the district court rendered summary judgment in favor of Citibank and dismissed 839's remaining claims with prejudice. In its memorandum opinion and order, the district court explained that Citibank had a contractual entitlement via the deed of trust to retain the $450,554.24 in initial insurance proceeds and the $190,208.01 in additional proceeds. It further noted that Citibank was entitled to apply both sets of insurance proceeds against the outstanding balance owed on the Note because 839 was in monetary default of the Note. Additionally, reasoning that the Restoration Clause in the Deed was only available to 839 in the event of non-default, the district court declined to reach the issue of whether Citibank was unreasonable in rejecting 839's proposed restoration plan, which was submitted post-default. Moreover, in light of its finding that 839 was in monetary default, the district court also declined to address the issue of whether 839 was in non-monetary default for its failure to maintain the Property in the condition required by the Deed.

On appeal, 839 advances two primary arguments. First, its argues that Citibank had no right, contractual or otherwise, to retain the $190,208.01 in

---

[2] Citibank paid $29,412.48 of the additional proceeds to its adjuster.

No. 12-11169

additional insurance proceeds that were dispensed by Lexington after Citibank sold the Note to JRG.  Second, 839 asserts that Citibank unreasonably refused to approve its proposed restoration plan for the Property.

## II.

This court reviews a district court's grant of summary judgment de novo. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012).  The parties do not dispute that Texas law applies in these proceedings.

## III.

After considering the briefs, the record, and the applicable statutory and case law, we AFFIRM the district court's summary judgment in favor of Citibank and adopt its analysis in full.