OWEN, Circuit Judge,
dissenting:
The district court issued a well-reasoned and thorough order stating its reasons for granting summary judgment in favor of National Casualty Company (National) and denying the motion for summary judgment sought by Western World Insurance Company (Western World). The district court correctly applied Texas law, and I would affirm. The district court held that there was no “use” of an automobile when Dar-line Rigsby was dropped from a gurney just before emergency medical technicians (EMTs) were about to place her into an ambulance. I respectfully dissent.
I
Preferred Ambulance, Inc., the insured, was to transport Darline Rigsby from a dialysis center, where she had just received treatment, to her home. The gurney on which Preferred Ambulance em *380 ployees placed Rigsby tipped before she was loaded into the ambulance, and Rigsby was dropped onto the ground. Her death days later was allegedly due to complications arising as a consequence of this accident.
Preferred Ambulance was insured by two policies, a commercial automobile policy issued by National and a commercial general liability policy issued by Western World that provides professional liability insurance coverage for an act or omission in the rendition of professional services, including specifically “Ambulance Service.” A suit was brought by Rigsby’s family against Preferred Ambulance, and that suit was ultimately settled when National and Western each paid $100,000. In competing motions for summary judgment, Western World sought to recover from National the $100,000 it had paid in settlement, and conversely, National sought to recover from Western World the $100,000 it had paid.
This is not the first time that the dispute between the two insurance companies as to their respective rights and obligations as a result of Darline Rigsby’s injuries and death has come before our court.[1] While the underlying suit by Rigsby’s family against Preferred Ambulance was pending, National sued Western World in the United States District Court for the Southern District of Texas.[2] The district court in that case held that both insurers had the duty to defend Preferred Ambulance but that the insurers’ respective indemnification obligations were not justiciable at that time.[3] Our court affirmed on appeal.[4] The holdings in the prior appeal, to which I will refer as National I, are the law of the case, in some respects, for purposes of the present appeal that Western World has pursued. In National I, the legal consequences of the facts that were pled in the Rigsby family’s suit against Preferred Ambulance were under consideration. In the present case, the legal consequences of the evidence actually adduced, as opposed to pleadings, are to be determined, since there is record evidence from the underlying lawsuit as to Preferred Ambulance’s role in causing, and responsibility for, Rigsby’s injuries.
Based on the record evidence, the district court held that National was entitled to summary judgment and to recover $100,000 from Western World. The district court denied Western World’s cross-motion for summary judgment.
II
A dispositive issue is whether a “use” of an automobile occurred within the meaning of National’s policy. The district court held that no “use” occurred, and Western World challenges that holding on appeal.
National’s Business Auto Coverage policy provides coverage for:
all sums an insured must pay as damages because of “bodily injury” ... to which this insurance applies, caused by an “accident” and resulting from the ownership, maintenance or use of a covered “auto.”
The district court properly applied the law of the case established in National I as to what would constitute “use” of an automobile. The district court carefully considered all of the evidence, as distinguished from the pleadings, observing:
*381 The facts of record in the Underlying Lawsuit are the following. Evora and Regalado, Preferred Ambulance employees, were moving Rigsby from the dialysis center to load her into the ambulance. Evora Dep. 37:23-24. As they were proceeding to the ambulance, it began to rain. Id. at 38:4-7. Evora then placed the stretcher into the load position (the wheels, however, remained touching the ground) and turned to open the rear doors of the ambulance with his right hand. Evora Dep. 45:2-14; Rega-lado Dep. 82:5-14, 91: 17-93:24. Evora had opened one door with his right hand and had his left hand on the stretcher, when there was an abrupt stop and the stretcher tilted over dropping Rigsby. Evora Dep. 55:13-25; Regalado Dep. 82:5-12, 92:12-17. Regalado testified the stretcher “just caught something and started tipping over.” Regalado Dep. 80:6-7. Evora testified he examined the stretcher after the accident and there was nothing wrong with it. As such, Evora stated he did not know what caused the stretcher to tip over. Evora Dep. 63:4-18.[5]
The district court concluded that “[t]he summary judgment record clearly shows the EMTs were not actually ‘placing’ Rigs-by into the ambulance at the time the stretcher tipped; they were merely in the process of ferrying Rigsby from the dialysis center to the ambulance. Additionally, as National indicates, their policy does not include a loading and unloading clause.”[6]
The panel majority’s opinion relies on four undisputed facts in reversing the district court’s conclusion that Rigsby was not being placed into the ambulance at the time she was dropped from the gurney.[7] These facts are that the EMTs “had reached the ambulance, had placed the gurney into its ‘load’ position, and had opened at least one of the ambulance doors”; furthermore, “one of the EMTs was touching both the gurney and the ambulance.”[8] But each of these actions was a preparatory step that occurred before the patient was loaded into the ambulance. To be sure, these facts suggest that the EMTs were about to attempt to place Rigsby into the ambulance. However, there is a line between preparation for attempting to load a patient and actually attempting to load a patient that must be drawn. Preparing to place Rigsby into the ambulance is not the equivalent of her “being placed into the ambulance.”[9] We said in National I that “[i]njuries that occur while patients are loaded into ambulances can happen only in ambulances.”[10] Rigsby’s injury did not occur while she was loaded into the ambulance. She was not in the ambulance, nor was the gurney in motion towards the opening of the ambulance. The gurney’s legs were on the ground when the gurney began to tilt and Rigsby was dropped.
From the testimony, the EMTs were not placing Rigsby into the ambulance when it tilted. The EMTs had not begun lifting the gurney or moving it into the ambulance; given Evora’s description of the accident, they had not gotten the gurney into a position from which they could begin to lift it. Evora had placed the gurney into the “load position,” which makes it easier to lift the gurney before placing it *382 into the ambulance, but it does not entail any actual lifting or placement. Nor does the load position attach the gurney to the ambulance or in any way prevent the gurney from moving. The undisputed evidence is that the gurney began to move laterally and tipped over before the EMTs had made any movement to place the gurney into the ambulance. Although the two EMTs may have been in the last steps of preparing the gurney to be loaded, they were not actually loading or attempting to load it.
The distinction between preparation and action is more consistent with the three-part test outlined in Mid-Century Insurance Co. v. Lindsey.[11] As noted by the panel’s majority opinion, the third element of the Lindsey test requires that the “use” of the auto be causally connected with the injury such that the use actually produces the injury.[12] Preparing a gurney to be loaded onto an ambulance does not entail “use” of the ambulance sufficient to create this causal connection. The ambulance is merely incidental to the preparation.[13]
Western World’s policy excluded coverage for injury “arising out of the ownership, maintenance, use or entrustment to others of any ... ‘auto’ ... owned or operated by or rented or loaned to any insured.” Western World’s policy defined “use” to include “loading and unloading” and defined the latter terms as follows:
“Loading or unloading” means the handling of property:
a.After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or “auto”;
b. While it is in or on an aircraft, watercraft or “auto”; or
c. While it is being moved from an aircraft, watercraft or “auto” to the place where it is finally delivered;
but “loading or unloading” does not include movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or “auto.”
As the district court noted, Western World did not contend in that court that the “loading or unloading” clause applied. Western World argued only that there had been a “use” of an “auto” with respect to Rigsby’s injuries. The district observed in a footnote that Rigsby was not property, in any event.
For all of the reasons considered above, I agree with the district court’s conclusion that Rigsby’s injuries were not produced by “use” of the ambulance within the meaning of either National’s or Western World’s respective policies.
‡ ‡ $
For the foregoing reasons, I would affirm the judgment of the district court.

. Nat’l Cas. Co. v. Western World Ins. Co., 669 F.3d 608 (5th Cir.2012).

. Id. at 612.

. Id.

. Id. at 611.

. Nat'l Cas. Co. v. W. World Ins. Co., No. 7:11-CV-91, slip op. at 8 (W.D. Tex. June 5, 2012).

. Id. at 8-9.

. Ante at 379.

. Ante at 379.

. National I, 669 F.3d at 613.

. Id. at 614.

. 997 S.W.2d 153 (Tex. 1999).

. Lindsey, 997 S.W.2d at 157.

. Cf. Lancer Ins. Co. v. Garcia Holiday Tours, 345 S.W.3d 50, 56-57 (Tex.2011) ("When the vehicle is merely the 'situs of an incident that could have occurred anywhere,' the causal connection to the vehicle’s use is typically too remote to invoke coverage.” (quoting Lindsey, 997 S.W.2d at 158)).