# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-50652

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 15, 2014

Lyle W. Cayce
Clerk

NATIONAL CASUALTY COMPANY

Plaintiff - Appellee

v.

WESTERN WORLD INSURANCE COMPANY

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:11-CV-91

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

National Casualty and Western World both insured an ambulance company that was named in a personal injury lawsuit. In the present case, each party seeks a declaratory judgment holding that the other has the sole duty to indemnify the insured. Additionally, each party seeks to recover the $100,000 it contributed to the settlement of the underlying lawsuit. In ruling on the summary judgment motions filed by both parties, the district court held that the injury in the underlying suit did not result from the use of an auto. The district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court therefore held that Western World has a duty to indemnify but that National Casualty has no such duty, and granted judgment in favor of National Casualty for $100,000. Because we conclude that the injury did result from the use of an auto, we VACATE the district court's judgment and REMAND the case for further proceedings.

## FACTUAL BACKGROUND

The following facts are not in dispute. On July 26, 2006, two emergency medical technicians ("EMTs") employed by Preferred Ambulance were attempting to transport Darline Rigsby from a dialysis center to her home by ambulance. The EMTs placed Rigsby on a rolling gurney and rolled her toward the ambulance outside. When they arrived at the rear of the ambulance, one of the EMTs placed the gurney into "load" position and opened at least one of the ambulance doors. While that EMT had one hand on the gurney and one hand on an ambulance door, and while the wheels of the gurney were still on the ground outside the ambulance, the wheels apparently became caught on something. The gurney tipped over, dropping Rigsby to the ground and fracturing her right shoulder. Because of this injury, Rigsby's dialysis port was moved from her right arm to her neck. Rigsby died several days later of a myocardial infarction. On November 14, 2007, Rigsby's daughter Alma Batie filed a wrongful death and survival action against Preferred Ambulance in Texas state court. Batie alleged negligence on the part of Preferred Ambulance and its employees, and alleged that Rigsby's death was proximately caused by the change in her dialysis port.

At the time of the accident, Preferred Ambulance was covered by insurance policies issued by National Casualty and Western World. The National Casualty policy covered "all sums an insured must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered

No. 12-50652

'auto.'" The National Casualty policy also contained an exclusion for bodily injuries "resulting from the providing or the failure to provide any medical or other professional services." The Western World policy covered "those sums the insured becomes legally obligated to pay as damages because of any 'bodily injury'" . . . to which this insurance applies caused by a 'professional incident.'" The Western World policy also contained an exclusion for "bodily injury . . . arising out of the . . . use . . . of any . . . 'auto.'" Additionally, the Western World policy provided that it would be excess over "any of the other insurance, whether primary, excess, contingent or on any other basis . . . if the loss arises out of the maintenance or use of . . . 'autos' . . . to the extent not subject" to the exclusion.

## PROCEDURAL HISTORY

National Casualty sued Preferred Ambulance, Western World, and Batie in federal court, seeking a declaration that it had no duty to defend or indemnify Preferred Ambulance in the underlying state court suit. The district court held that both National Casualty and Western World had a duty to defend the underlying suit, but found the indemnification issue to be unripe for adjudication. Both insurers appealed, and a panel of this court affirmed in a published opinion. *See National Cas. Co. v. Western World Ins. Co.*, 669 F.3d 608 (5th Cir. 2012).

> The panel explained:
>
> The issue here is whether Rigsby's injury resulted from the "use" of an automobile, as that phrase is used in the National Casualty policy and interpreted under Texas law. The underlying suit alleged that Rigsby was injured "during an attempt to load her into the Preferred Ambulance vehicle." The complaint does not allege exactly when in the process of loading Rigsby into the ambulance her injury occurred. Since the duty to defend extends to any allegation that could conceivably be covered by the policy, . . . we interpret the allegation in the underlying complaint to mean that Rigsby was injured while she was being placed into the ambulance, which is the interpretation most favorable to coverage.

3

No. 12-50652

*National Casualty*, 669 F.3d at 613 (footnote omitted). The panel held that under Texas law, an injury relates to the "use" of an automobile if (1) the accident arose out of the inherent nature of the automobile, as such; (2) the accident arose within the natural territorial limits of the automobile and the actual use had not terminated; and (3) the automobile did not merely contribute to cause the condition that produced the injury, but itself produced the injury. *Id.* (citing *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 154 (Tex. 2010)).

The parties did not dispute that the first two conditions were satisfied. Rather, National Casualty argued only that if a person is injured while being loaded into an ambulance, the ambulance itself does not "produce" the injury. The panel relied heavily upon *Mid-Century Insurance Co. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999), in which a boy tried to enter a locked truck through the cab's back window and accidentally fired a loaded shotgun in a gun rack over the window, injuring a person in another car. The panel quoted the following passage from *Lindsey*:

> [The boy's] sole purpose was to gain entry into the truck to retrieve his clothing. His conduct did not stray from that purpose. He did not play with the gun, or try to shoot it, or load or unload it, or purposely handle it in any way. His contact with the gun was entirely inadvertent. Although the boy was attempting an unorthodox method of entry, it was not an unexpected or unnatural use of the vehicle, given his size, the fact that the vehicle was locked, and the nature of boys. It was the boy's efforts to enter the vehicle that directly caused the gun to discharge and Lindsey to become injured . . . . Application of the third Appleman/Couch factor makes this a close case, but we think on balance the . . . truck "produced"—to use the factor's word—the injury. Certainly, the truck was not merely the situs of activity, unrelated to any use of the truck that resulted in the accident.

*National Casualty*, 669 F.3d at 613-14 (quoting *Lindsey*, 997 S.W.2d at 158-59). The panel stated that, as in *Lindsey*, "the 'sole purpose' of the alleged attempt

4

to place Rigsby in the ambulance was to use the ambulance"; "[t]he alleged attempt to load her into the ambulance 'directly caused' her injury"; and "[a]ttempting to load a patient onto an ambulance is 'not an unexpected or unnatural use of the vehicle.'" *Id.* at 614. The panel concluded that "[i]f the truck in *Lindsey* 'produced' an injury when an entering passenger accidentally discharged a gun located in that truck, an ambulance 'produces' an injury when an EMT loads a passenger into that ambulance." *Id.*

The panel also distinguished *Lancer Insurance Co. v. Garcia Holiday Tours*, 345 S.W.3d 50 (Tex. 2011), in which a bus driver's transmission of tuberculosis to passengers was held to not be caused by "use" of the bus. *National Casualty*, 669 F.3d at 614. The panel explained that "[w]hereas there is little nexus between transporting passengers in a vehicle and infecting passengers in that vehicle with disease, there is a significant nexus between transporting passengers in a vehicle and loading them into that vehicle." *Id.* The panel stated that because "transmission of disease can occur anywhere," it was "incidental" that it happened on a bus in a particular instance. *Id.* The panel stated that "[c]onversely, loading passengers into automobiles is integral to the use of automobiles. Injuries that occur while patients are loaded into ambulances can happen only in ambulances." *Id.*

However, the panel held that Western World's duty to defend was not negated by the "use of an auto" exclusion in its policy. The panel explained:

> Here, the underlying complaint alleges injuries that are covered under Western World's policy as "ambulance services" but are not excluded as resulting from the "use" of an automobile. For instance, the underlying complaint alleges that Preferred Ambulance's employees failed to properly secure Rigsby to the gurney. The performance of this task is regulated by Texas law . . . and is an integral component of "ambulance services." Accordingly, the allegation falls under Western World's "ambulance services" coverage provision and triggers Western World's duty to defend the underlying lawsuit.

No. 12-50652

> That duty to defend is not negated by Western World's exclusionary provision because injuries resulting from the failure of Preferred Ambulance to secure Batie into the gurney do not arise from "use" of an automobile. Such injuries are not excluded by the Western World policy because they do not result from the "loading or unloading" of property or "operation" of the ambulance. The failure to secure Batie in the gurney occurred before Preferred Ambulance's employees even began to move her towards the ambulance, so the conduct causing this alleged injury does not arise out of the "operation" of the ambulance.

*National Casualty*, 669 F.3d at 616-17 (footnote omitted). The panel also cited *St. Paul Fire and Marine Insurance Co. v. American International Surplus Lines Insurance Co.*, 1997 WL 160192 (N.D. Tex. Mar. 31, 1997), describing it as holding that the "'use' provision in [an] insurance policy is triggered only when [the] ambulance is being operated or [the] patient is 'actually being placed in or removed from the ambulance.'" *Id.* at 617 (quoting *St. Paul*, 1997 WL 160192 at *2).

Finally, the panel held that National Casualty's duty to defend was not negated by the "professional services" exclusion in its policy. The panel held that "because the underlying complaint alleges that [Rigsby's] injury was caused in part by conduct that did not constitute the provision of 'professional services,' National Casualty's professional services exclusion does not limit its duty to defend." *National Casualty*, 669 F.3d at 615. In the absence of a policy definition of "professional services," the panel employed the following definition: "[T]he task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training." *Id.* (quoting *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 423 (5th Cir. 2010)). The panel noted that the underlying complaint alleged "a failure to direct appropriate resources to the accident scene," and held that this

was an allegation of "an injury resulting from the performance of an 'administrative' task, not 'professional services.'" *Id.* at 616.[1]

The parties subsequently settled the underlying suit, with National Casualty and Western World each contributing $100,000. National Casualty then sued Western World once again in federal court, seeking a declaration that it had no duty to indemnify Preferred Ambulance in the underlying suit and recovery of the $100,000 it contributed toward the settlement. Western World counterclaimed, seeking a declaration that National Casualty had a duty to indemnify and Western World did not, or, alternately, that Western World's coverage was excess over National Casualty's primary coverage. In either event, Western World sought to recover the $100,000 it contributed toward the settlement.

Both parties moved for summary judgment. Because the dispute concerned the duty to indemnify rather than the duty to defend, the district court looked to the actual facts of the underlying incident rather than the pleadings in the state court case. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). The district court held that "[t]he acts of providing emergency medical care and of carrying a person from some location to an ambulance are . . . a necessary incident to the operation of an ambulance service, but are not fairly described as the use of an ambulance." R. 304. The district court apparently distinguished this court's prior holding in the duty to defend case on the grounds that "the EMTs were not actually 'placing' Rigsby into the ambulance at the time the stretcher tipped; they were merely in the process of ferrying Rigsby from the dialysis center to the

---

[1] On the other hand, the panel remarked that "the provision of emergency medical care, in which, under Texas law, all EMTs must be 'certified' as 'proficient,'" *see* Tex. Health & Safety Code Ann. §§ 773.047, 773.048, 773.049, does constitute 'professional services.'" *National Casualty*, 669 F.3d at 615 n.3.

ambulance." *Id.* Accordingly, the district court held that National Casualty had no duty to indemnify. For the same reason, the district court held that the "use of an auto" exclusion in the Western World policy did not apply. Finally, the district court held that "[b]ecause National Casualty has a contractual-subrogation right and does not have a duty to indemnify its insured, it is entitled to reimbursement by Western World." R. 309. Western World appealed.

## DISCUSSION

As explained above, the coverage provision in the National Casualty policy and an exclusion in the Western World policy both refer to "use" of an auto. In the earlier appeal dealing with the duty to defend, the panel assumed that Rigsby was injured "while she was being placed into the ambulance," and held that such an injury resulted from the "use" of an automobile. *National Casualty*, 669 F.3d at 613-14. Because this earlier opinion is controlling, we are bound to conclude that Rigsby's injury resulted from the use of an auto if we determine that she was injured "while she was being placed into the ambulance."

We disagree with the district court's conclusion that Rigsby was injured while being transported to the ambulance from the dialysis center. Instead, we conclude, based on the plain meaning of the words, that the injury occurred while Rigsby was being placed into the ambulance. The undisputed facts show that the EMTs had reached the ambulance, had placed the gurney into its "load" position, and had opened at least one of the ambulance doors at the time of the injury. It is true, as National Casualty argues, that "[t]he gurney was not touching the ambulance or the doors of the ambulance when the incident occurred." Red Brief at 4. However, one of the EMTs was touching both the gurney and the ambulance, and had clearly begun the process of placing Rigsby into the ambulance. Accordingly, we hold that Rigsby's injury resulted from the use of an auto.

No. 12-50652

Western World argues that because Rigsby's injury resulted from the use of an auto, its policy exclusion for "bodily injury . . . arising out of the . . . use . . . of any . . . 'auto'" bars coverage, and that the district court therefore erred in finding this exclusion to be inapplicable. Because the district court found the exclusion inapplicable on the ground that Rigsby's injury did not result from the use of an auto, its determination must be reversed. However, Western World has not shown that it is entitled to summary judgment in its favor on this issue. The earlier panel held that "the underlying complaint alleges injuries that are covered under Western World's policy as 'ambulance services' but are not excluded as resulting from the 'use' of an automobile." *National Casualty*, 669 F.3d at 616. Specifically, the panel noted that "the underlying complaint alleges that Preferred Ambulance's employees failed to properly secure Rigsby to the gurney," and held that "injuries resulting from the failure of Preferred Ambulance to secure Batie into the gurney do not arise from 'use' of an automobile."[2] *Id.* at 616-17. Based on the law of the case, if the EMTs in fact failed to properly secure Rigsby to the gurney before they began to move her toward the ambulance, and if Rigsby's injury resulted from this failure, Western World's auto exclusion is inapplicable. Although we have located no evidence in the record on this issue, neither party has addressed whether any such evidence exists. Accordingly, we decline to resolve this issue in Western World's favor, and leave it to the consideration of the district court on remand.

## CONCLUSION

Because the district court did not address the "professional services" exclusion in the National Casualty policy, we decline to address it in the first

---

[2] As noted above, the panel explained that "[t]he [alleged] failure to secure Batie into the gurney occurred before Preferred Ambulance's employees even began to move her towards the ambulance, so the conduct causing this injury does not arise out of the 'operation' of the ambulance." *National Casualty*, 669 F.3d at 617.

9

No. 12-50652

instance on appeal. Instead, expressing no opinion on the ultimate question of indemnity under either policy, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with our holding as to use of an auto.

No. 12-50652

OWEN, Circuit Judge, dissenting:

The district court issued a well-reasoned and thorough order stating its reasons for granting summary judgment in favor of National Casualty Company (National) and denying the motion for summary judgment sought by Western World Insurance Company (Western World). The district court correctly applied Texas law, and I would affirm. The district court held that there was no "use" of an automobile when Darline Rigsby was dropped from a gurney just before emergency medical technicians (EMTs) were about to place her into an ambulance. I respectfully dissent.

## I

Preferred Ambulance, Inc., the insured, was to transport Darline Rigsby from a dialysis center, where she had just received treatment, to her home. The gurney on which Preferred Ambulance employees placed Rigsby tipped before she was loaded into the ambulance, and Rigsby was dropped onto the ground. Her death days later was allegedly due to complications arising as a consequence of this accident.

Preferred Ambulance was insured by two policies, a commercial automobile policy issued by National and a commercial general liability policy issued by Western World that provides professional liability insurance coverage for an act or omission in the rendition of professional services, including specifically "Ambulance Service." A suit was brought by Rigsby's family against Preferred Ambulance, and that suit was ultimately settled when National and Western each paid $100,000. In competing motions for summary judgment, Western World sought to recover from National the $100,000 it had paid in

11

No. 12-50652

settlement, and conversely, National sought to recover from Western World the $100,000 it had paid.

This is not the first time that the dispute between the two insurance companies as to their respective rights and obligations as a result of Darline Rigsby's injuries and death has come before our court.[1]  While the underlying suit by Rigsby's family against Preferred Ambulance was pending, National sued Western World in the United States District Court for the Southern District of Texas.[2]  The district court in that case held that both insurers had the duty to defend Preferred Ambulance but that the insurers' respective indemnification obligations were not justiciable at that time.[3]  Our court affirmed on appeal.[4] The holdings in the prior appeal, to which I will refer as *National I*, are the law of the case, in some respects, for purposes of the present appeal that Western World has pursued.  In *National I*, the legal consequences of the facts that were pled in the Rigsby family's suit against Preferred Ambulance were under consideration.  In the present case, the legal consequences of the evidence actually adduced, as opposed to pleadings, are to be determined, since there is record evidence from the underlying lawsuit as to Preferred Ambulance's role in causing, and responsibility for, Rigsby's injuries.

---

[1] *Nat'l Cas. Co. v. Western World Ins. Co.*, 669 F.3d 608 (5th Cir. 2012).

[2] *Id.* at 612.

[3] *Id.*

[4] *Id.* at 611.

No. 12-50652

Based on the record evidence, the district court held that National was entitled to summary judgment and to recover $100,000 from Western World. The district court denied Western World's cross-motion for summary judgment.

## II

A dispositive issue is whether a "use" of an automobile occurred within the meaning of National's policy. The district court held that no "use" occurred, and Western World challenges that holding on appeal.

National's Business Auto Coverage policy provides coverage for:

> all sums an insured must pay as damages because of "bodily injury" . . . to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The district court properly applied the law of the case established in *National I* as to what would constitute "use" of an automobile. The district court carefully considered all of the evidence, as distinguished from the pleadings, observing:

> The facts of record in the Underlying Lawsuit are the following. Evora and Regalado, Preferred Ambulance employees, were moving Rigsby from the dialysis center to load her into the ambulance. Evora Dep. 37:23-24. As they were proceeding to the ambulance, it began to rain. *Id*. at 38:4-7. Evora then placed the stretcher into the load position (the wheels, however, remained touching the ground) and turned to open the rear doors of the ambulance with his right hand. Evora Dep. 45 :2-14; Regalado Dep. 82:5-14, 91: 17-93:24. Evora had opened one door with his right hand and had his left hand on the stretcher, when there was an abrupt stop and the stretcher tilted over dropping Rigsby. Evora Dep. 55:13-25; Regalado Dep. 82:5-12, 92:12-17. Regalado testified the stretcher "just caught something and started tipping over." Regalado Dep. 80:6-7. Evora testified he examined the stretcher after the accident and there was nothing wrong

13

No. 12-50652

with it.  As such, Evora stated he did not know what caused the stretcher to tip over. Evora Dep. 63:4-18.[5]

The district court concluded that "[t]he summary judgment record clearly shows the EMTs were not actually 'placing' Rigsby into the ambulance at the time the stretcher tipped; they were merely in the process of ferrying Rigsby from the dialysis center to the ambulance.  Additionally, as National indicates, their policy does not include a loading and unloading clause."[6]

The panel majority's opinion relies on four undisputed facts in reversing the district court's conclusion that Rigsby was not being placed into the ambulance at the time she was dropped from the gurney.[7]  These facts are that the EMTs "had reached the ambulance, had placed the gurney into its 'load' position, and had opened at least one of the ambulance doors"; furthermore, "one of the EMTs was touching both the gurney and the ambulance."[8]  But each of these actions was a preparatory step that occurred before the patient was loaded into the ambulance.  To be sure, these facts suggest that the EMTs were *about* to attempt to place Rigsby into the ambulance.  However, there is a line between preparation for attempting to load a patient and actually attempting to load a patient that must be drawn.  Preparing to place Rigsby into the ambulance is not the equivalent of her "being placed into the ambulance."[9]  We said in *National I*

---

[5] *Nat'l Cas. Co. v. W. World Ins. Co.*, No. 7:11-CV-91, slip op. at 8 (W.D. Tex. June 5, 2012).

[6] *Id*. at 8-9.

[7] *Ante* at 8.

[8] *Ante* at 8.

[9] *National I*, 669 F.3d at 613.

that "[i]njuries that occur while patients are loaded into ambulances can happen only in ambulances."[10]  Rigsby's injury did not occur while she was loaded into the ambulance.  She was not in the ambulance, nor was the gurney in motion towards the opening of the ambulance.  The gurney's legs were on the ground when the gurney began to tilt and Rigsby was dropped.

From the testimony, the EMTs were not placing Rigsby into the ambulance when it tilted.  The EMTs had not begun lifting the gurney or moving it into the ambulance; given Evora's description of the accident, they had not gotten the gurney into a position from which they could begin to lift it.  Evora had placed the gurney into the "load position," which makes it easier to lift the gurney before placing it into the ambulance, but it does not entail any actual lifting or placement.  Nor does the load position attach the gurney to the ambulance or in any way prevent the gurney from moving.  The undisputed evidence is that the gurney began to move laterally and tipped over before the EMTs had made any movement to place the gurney into the ambulance.  Although the two EMTs may have been in the last steps of preparing the gurney to be loaded, they were not actually loading or attempting to load it.

The distinction between preparation and action is more consistent with the three-part test outlined in *Mid-Century Insurance Co. v. Lindsey*.[11]  As noted by the panel's majority opinion, the third element of the *Lindsey* test requires that the "use" of the auto be causally connected with the injury such that the use actually produces the injury.[12]  Preparing a gurney to be loaded onto an

---

[10] *Id.* at 614.

[11] 997 S.W.2d 153 (Tex. 1999).

[12] *Lindsey*, 997 S.W.2d at 157.

No. 12-50652

ambulance does not entail "use" of the ambulance sufficient to create this causal connection. The ambulance is merely incidental to the preparation.[13]

Western World's policy excluded coverage for injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." Western World's policy defined "use" to include "loading and unloading" and defined the latter terms as follows:

> "Loading or unloading" means the handling of property:
> a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
> b.    While it is in or on an aircraft, watercraft or "auto"; or
> c.    While it is being moved from an aircraft, watercraft or "auto' to the place where it is finally delivered;
>        but "loading or unloading" does not include movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

As the district court noted, Western World did not contend in that court that the "loading or unloading" clause applied. Western World argued only that there had been a "use" of an "auto" with respect to Rigsby's injuries. The district observed in a footnote that Rigsby was not property, in any event.

For all of the reasons considered above, I agree with the district court's conclusion that Rigsby's injuries were not produced by "use" of the ambulance within the meaning of either National's or Western World's respective policies.

* * * * *

---

[13] *Cf. Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 56-57 (Tex. 2011) ("When the vehicle is merely the 'situs of an incident that could have occurred anywhere,' the causal connection to the vehicle's use is typically too remote to invoke coverage." (quoting *Lindsey*, 997 S.W.2d at 158)).

16

No. 12-50652

For the foregoing reasons, I would affirm the judgment of the district court.